IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.H.,[1]

        Plaintiff,

v.                                            Case No. 18-2241-JWB

NANCY BERRYHILL,
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security terminating Plaintiff's social security disability benefits under section 223 of the Social Security Act, 42 U.S.C. § 423. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 9, 12.) The Commissioner's decision is REVERSED AND REMANDED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004) (terminating benefits) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable

---

[1] Plaintiff's initials are used to protect privacy interests.

mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

As this case involves a termination of benefits, an eight-step sequential process is used by the Commissioner. *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004); 20 C.F.R. § 404.1594(f)(1-8). If a determination is made that a recipient is unable to engage in substantial gainful activity at any step in the process, evaluation under a subsequent step is not necessary. 20 C.F.R. § 404.1594(f). At step one, the Commissioner determines whether the recipient is engaged in substantial gainful activity. *Id.* § 404.1594(f)(1). If not, the Commissioner then considers at step two whether the recipient has a medically severe impairment or combination of impairments. *Id.* § 404.1594(f)(2). If any current impairment(s) meets or equals a listed impairment, his disability is conclusively presumed to continue. *Id.* At step three, the Commissioner determines if the impairment(s) present at the most recent favorable decision has undergone medical improvement. *Id.* § 404.1594(f)(3) & (b)(1). In evaluating medical improvement, the ALJ compares "the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision . . . to the medical severity of that impairment(s) at that time." *Id.* § 404.1594(b)(7). If medical improvement is found in step three, step four requires a

determination regarding whether the recipient's medical improvement is related to his ability to work. *Id.* § 404.1594(f)(4). At step five, if there is no medical improvement or if the medical improvement is not related to the ability to work, the Commissioner considers a number of exceptions. If none of the exceptions apply, the disability is found to continue.

At step six, if medical improvement is found, the Commissioner will determine whether the current impairments in combination are severe. *Id.* § 404.1594(f)(6). If the current impairments in combination are severe, the RFC will be assessed at step seven based on all the current impairments, and the Commissioner will consider whether the recipient can still do work he has done in the past. *Id.* § 404.1594(f)(7). If so, the disability benefits will be terminated. *Id.* If not, at step eight, the Commissioner will determine whether he can perform other work existing in the economy given Plaintiff's RFC. *Id.* § 404.1594(f)(8). If he can, the disability benefits will be terminated. *Id.* In a termination case, the burden is on the Commissioner to show both (1) medical improvement related to Plaintiff's ability to work, and (2) that Plaintiff is currently able to engage in substantial gainful activity. *Patton v. Massanari*, 20 F. App'x. 788, 789 (10th Cir. 2001) (citing *Glenn*, 21 F.3d at 987; 20 C.F.R. 404.1594(a)).

**II.     Background and Procedural History**

In May 2001, Plaintiff was found disabled, as of June 28, 2000, because of fractures of his arms requiring ongoing medical management. A continuing disability review on August 30, 2003, found that Plaintiff's disability was continuing. Another disability review occurred on May 19, 2008, and found that Plaintiff's condition had medically improved beginning May 15, 2008. Plaintiff's period of disability was terminated effective July 31, 2008. Plaintiff sought judicial review after exhausting his administrative remedies. On October 24, 2013, Judge Lungstrum reversed and remanded the decision of the Commissioner because of his failure to evaluate the

medical opinion of Dr. Majure-Lees. (R. at 490-500.) On June 2, 2015, administrative law judge (ALJ) George M. Bock issued his decision finding that Plaintiff was not disabled as of May 1, 2008. (R. at 469-476.) Plaintiff again exhausted his administrative remedies and appealed to the district court. On February 10, 2017, Judge Crow reversed and remanded the decision of the Commissioner because of his failure to evaluate the medical opinion of Dr. Brooks. (R. at 953-975.)

On October 17, 2017, a hearing was held before ALJ Robert Burbank. After reviewing the record, the AJL determined that Plaintiff's disability ended as of May 15, 2008. (R. at 935-952.) The ALJ determined that Plaintiff had the following severe impairments as of May 15, 2008: previous fracture with malunion of the left upper extremity, alcohol abuse, major depressive disorder, dysthymia, anxiety disorder, history of traumatic brain injury, diabetes mellitus, epicondylitis and tendinitis of the right wrist and elbow. (R. at 937.) The ALJ determined that the impairments did not meet or equal a listed impairment. (R. at 939.) The ALJ found that medical improvement occurred as of May 15, 2008, and that the medical improvement was related to the ability to work. The ALJ determined that Plaintiff has had the RFC to perform light work with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand or walk a total of 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday; he could not climb ladders, ropes, or scaffolds; he could not crawl and should avoid work in hazardous conditions; he could use the non-dominant left arm and hand for assist only; and he has been limited to jobs that involve understanding, remembering, and carrying out simple instructions and performing routine, repetitive tasks. (R. at 941.)

The ALJ further found that Plaintiff has not been able to perform past relevant work as of May 15, 2008. However, the ALJ ultimately found that Plaintiff was able to perform a significant

4

number of jobs in the national economy as of May 15, 2008, considering Plaintiff's RFC. (R. at 951-52.) Plaintiff exhausted his administrative review of the decision. Plaintiff appealed the decision to this court and raises several arguments. They will be addressed in turn.

**III. Analysis**

**A. RFC Physical Determination**

Plaintiff raises several arguments asserting that the ALJ's physical RFC determination is not supported by substantial evidence.

<u>Severe epicondylitis and tendinitis of the right wrist and elbow</u>. Plaintiff first argues that the ALJ erred by failing to include functional limitations in the RFC regarding his severe epicondylitis and tendinitis of the right wrist and elbow. Plaintiff, however, does not identify the specific limitations that should have been included in his RFC. In reviewing the medical evidence, the ALJ engaged in a significant review of Plaintiff's right arm. The ALJ stated that Plaintiff testified that he could lift a gallon of milk, which weighs approximately 10 pounds, and a 24 can case of pop with a handle, weighing approximately 20 pounds. Plaintiff also engaged in yard work, painted his mother's house all day, refinished a basement and stained a deck. Moreover, reviewing the record, the ALJ stated that Plaintiff had normal strength and range of motion in his right arm in April 2008. Plaintiff had not been to physical therapy for right arm pain since 2006 and had not sought orthopedic treatment since January 2007. The ALJ determined that he had full strength in his right arm since May 15, 2008. Based on this record, the ALJ did include functional limitations. The ALJ determined that Plaintiff was limited to light work that involved lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently. The ALJ specifically found that Plaintiff's treatment history was inconsistent with disabling pain. (R. at 943.)

5

As Plaintiff failed to identify specific limitations or cite to evidence in the record regarding such limitations, the court finds that the ALJ has not erred in formulating Plaintiff's RFC with respect to Plaintiff's severe epicondylitis and tendinitis of the right wrist and elbow. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate judge that, '[w]ith regard to [her] hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitations.'")

<u>Dr. Rosamond and Dr. Majure-Lees</u>. Plaintiff argues that the ALJ erred by not adopting all of the functional limitations identified by Dr. Rosamond and Dr. Majure-Lees, the state agency reviewing physicians. Both state agency physicians reviewed the medical records and offered opinions in 2008. Dr. Majure-Lees opined that Plaintiff could perform light work, with no reaching overhead, handling or fingering with his left arm. (R. at 945.) Dr. Rosamond opined that Plaintiff could perform light work without the use of his left arm. (R. at 945.)

Plaintiff contends that the ALJ erred by failing to include these limitations in the RFC. The ALJ gave partial weight to these opinions. (R. at 945.) Plaintiff asserts that the ALJ's RFC determination, that Plaintiff can use his left arm to assist, is inconsistent with the limitations identified by Dr. Rosamond and Dr. Majure-Lees and that the ALJ failed to explain how he resolved these inconsistencies. Reviewing the opinion, the ALJ does not explicitly address how a limitation that the left arm may assist the right arm is consistent with these opinions which severely limit the use of the left arm. The Commissioner does not assert that there is medical evidence that Plaintiff can use the left arm/hand as an assist for the right arm/hand. Rather, the Commissioner

essentially argues that the ALJ determined that Plaintiff was not as substantially limited as opined by Dr. Rosamond and Dr. Majure-Lees.

The Commissioner argues that the RFC is supported by substantial evidence because the ALJ noted that Plaintiff had only mildly reduced grip strength, Plaintiff can get dressed, buckle his belt, make simple meals, drive, landscape, and help his mother move. (Doc. 12 at 12-13.) After a review, the court finds that the ALJ's RFC regarding Plaintiff's left arm limitations is not supported by substantial evidence.

First, the ALJ cites to Dr. Debroy's April 14, 2008, evaluation regarding Plaintiff's grip strength in support of his conclusion that Plaintiff can use his left hand as an assist. (R. at 942, 945.) While Dr. Debroy did note that Plaintiff had a 4/5 grip with his left hand during the evaluation, Dr. Debroy did not conclude that this would allow Plaintiff to use his left hand as an assist to his right hand. Rather, Dr. Debroy opined that Plaintiff had "**nonfunctional** use of his left upper extremity and w**ould not be able to perform** any fine-motor actions or significant handling of objects or **any lifting or carrying** with the left upper extremity." (R. at 354) (emphasis supplied.) A March 24, 2008, physical examination regarding range of motion also shows significant limitations for Plaintiff's left arm. (R. at 355.) Dr. Debroy's opinion and records do not support a finding that Plaintiff can use his left hand as an assist based on the sole fact that his grip strength is rated a 4/5. The ALJ may not pick and choose from an opinion and rely on only those portions favorable to a finding of nondisability. *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)). The ALJ must show how the evidence supports the RFC by citing "specific medical facts ... and nonmedical evidence." *See Southard v. Barnhart*, 72 F. App'x. 781, 784 (10th Cir. 2003).

With respect to Plaintiff's testimony, the ALJ determined that he testified that he can buckle his belt, cook simple meals and do light household chores. (R. at 942.) The ALJ also noted that "despite his significantly limited left arm, he has been able to engage in a wide-range of activities. For example, he was observed driving in 2011, and in April 2014, he reported helping his mother move." (*Id.*) A review of the hearing transcripts shows that Plaintiff testified that he could pick up a piece of paper with his left hand, could not type, could unbuckle his belt, and use his left hand a little bit in getting dressed. (R. at 454, 924, 1192.) With respect to cooking and chores, there is no indication in the record of whether he does these activities with his left hand or if his left hand assists his right hand in these activities. Although Plaintiff was observed driving on a single occasion, the record does not reflect whether he needed to use his left hand or if his vehicle had been modified to account for his limitations. With respect to helping his mother move, the record states that he "helped his mom move stuff." (R. at 769.) The record does not indicate if he used his left arm and what items were being moved. It is not clear if she moved her entire household or something else entirely.

Plaintiff's ability to unbuckle his belt, pick up a piece of paper, and get dressed, activities that the record reflects were at least in part performed with his left hand, do not constitute substantial evidence supporting the ALJ's RFC finding regarding Plaintiff's ability to use his left hand and arm to assist his right hand and arm with no other limitations. Based on a review of the opinions of Drs. Rosamond, Majure-Lees, and Debroy, and the above medical records and testimony, Plaintiff's left arm is essentially nonfunctional. The ALJ has not sufficiently addressed how the limitations regarding the use of Plaintiff's left hand and arm were supported by the evidence.

8

Therefore, as the court has determined that the RFC is not supported by substantial evidence and is "contrary to the overwhelming medical evidence in the record," the decision must be reversed. *Hamlin*, 365 F.3d at 1224. The court declines to review the remaining arguments regarding the physical RFC findings as Plaintiff may present those issues on remand and the ALJ's treatment of those issues may be affected by his consideration of the above. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

### B. RFC Mental Determination

With respect to Plaintiff's mental RFC limitations, the ALJ limited Plaintiff to jobs that involved understanding, remembering, and carrying out simple instructions and performing routine, repetitive tasks. The ALJ determined that Plaintiff had the following severe mental health impairments: major depressive disorder, dysthymia, anxiety disorder, and history of traumatic brain injury. (R. at 937.) The medical record shows that Plaintiff was treated for these impairments and received medication for the same. There are no medical opinions by treating physicians or state mental health professionals regarding Plaintiff's functional limitations as a result of these impairments. Plaintiff argues that the ALJ has a duty to develop the record and obtain a mental health RFC from a state agency physician or a consultative examining physician. The Commissioner asserts that the ALJ may determine the RFC from a review of the record and that there is no duty to obtain a qualified psychologist or psychiatrist to complete an assessment.

In considering whether Plaintiff had a severe impairment, the ALJ reviewed Plaintiff's mental impairments. The ALJ found that Plaintiff had moderate limitations in understanding, remembering or applying information and concentrating, persisting, and maintaining pace. (R. at 940.) The ALJ also determined that Plaintiff had no limitations with respect to adapting and

9

managing oneself.  The ALJ then stated that there is evidence in the record that Plaintiff had some difficulty regulating his emotions, maintaining his well-being, and controlling his behavior.  (R. at 940.)  Plaintiff argues that this statement is inconsistent with a finding that Plaintiff has no limitations in this area.  (Doc. 9 at 31.)  The Commissioner does not address this argument.

Although the Commissioner may complete the mental health RFC without assistance, the court has some concerns that the record was not fully developed with respect to Plaintiff's mental impairments.  *See Brewer v. Chater*, 1997 WL 338600, *2 (10th Cir. June 20, 1997) (ALJ may determine the RFC without mental health professional when the determination is supported by substantial evidence and "the record lacks any evidence seriously challenging the ALJ's assessment of [the] mental RFC."); *Branstetter v. Colvin*, No. 13-CV-1275-DDC, 2014 WL 3700976, at *6–7 (D. Kan. July 25, 2014) (remanding to develop the record).  As pointed out by Plaintiff, there are internal inconsistencies in the ALJ's opinion.  The ALJ should resolve any inconsistencies on remand.  Also, there is evidence in the record that would support limitations due to his impairments.  (R. at 948.)  Although the ALJ rejected the report of Lisa Fortner, Plaintiff's sister and a social worker, Ms. Fortner indicated that Plaintiff could not work with the public and could not work without interruption due to his psychological symptoms.  (*Id.*)   Dr. Brooks also opined that Plaintiff's mental condition had declined and his memory had declined, although the ALJ gave little weight to this opinion after finding that the opinions were vague and conclusory.  (R. at 949.) In 2012, Plaintiff completed a TBI-uniform assessment that showed moderate to severe cognitive limitations.  The ALJ discounted this because Plaintiff did not exhibit any memory impairment in a related interview with Dr. Schemmel.  However, Dr. Schemmel subsequently observed memory impairment in November 2012, but the ALJ did not give weight to this because Plaintiff did not follow through with the referral or treatment.  (R. at 947.)

The ALJ has a duty to develop the record as to material issues even when Plaintiff was represented by counsel. *Branstetter*, 2014 WL 3700976, at *4. Although there is medical evidence regarding Plaintiff's memory issues and a severe impairment of history of traumatic brain injury, the ALJ did not develop the record by obtaining the assistance of a mental health professional regarding potential memory limitations. Rather, the ALJ determined that Plaintiff had the ability to understand, remember, and carry out simple instructions. Also, as noted, Plaintiff has been prescribed medications for his mental health conditions but there is no opinion in the record regarding the effect of these medications on Plaintiff's ability to perform work as a result of the side effects. *See id.* at *6. Considering Plaintiff's severe mental impairments and medical evidence regarding potential disabling impairments, the ALJ erred by assessing Plaintiff's RFC without the assistance of a mental health professional. *See id.* at *6-7; see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993). On remand, the record must be fully developed regarding Plaintiff's mental impairments.

### C. Medical Improvement Date

Plaintiff contends that the ALJ erred in fixing the date of medical improvement. Because this action is being reversed and remanded, the court need not address this issue.

### D. Vocational Expert Testimony

Plaintiff contends that the Commissioner failed to meet her burden at step eight. Because the court is reversing and remanding the ALJ's decision, the court need not address these arguments as the ALJ must reopen the hearing as discussed in this order prior to determining Plaintiff's RFC.

**IV. Conclusion**

The Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order. The court denies Plaintiff's request to award benefits as additional fact-finding may be useful to the ALJ on remand and the court does not find substantial and uncontradicted evidence that Plaintiff is disabled. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

IT IS SO ORDERED this 23rd day of May 2019.

                                              _____s/ John W. Broomes_____
                                              JOHN W. BROOMES
                                              UNITED STATES DISTRICT JUDGE